UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ORLINDO ANTONIO MYLES,

          Petitioner,

v.

W.L. MONTGOMERY,

          Respondent.

No.  2:15-cv-00591 TLN GGH

<u>FINDINGS AND RECOMMENDATIONS</u>

*Introduction and Summary*

       Petitioner, a state prisoner proceeding through counsel, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c).

       After a lengthy exhaustion, and ultimately unproductive, hiatus, petitioner filed a Second Amended Petition ("SAC"). ECF No. 38.  This is one of the few cases where understanding what are the precise issues in the case could be more difficult than their resolution.

       No one contests that petitioner's claim that the jury was erroneously instructed with an accomplice instruction is an issue in this petition.  The controversy surrounding identification of the issues concerns the ineffective assistance of counsel claim: whether there is a singular ineffective assistance claim—that petitioner's trial counsel was ineffective for failing to ask for

1

excusal of petitioner's jury when the co-defendant (who had a separate jury) was testifying—or whether there is another issue concerning counsel's not requesting severance of the trials in the first place. The undersigned finds that no issue in this case exists with respect to a distinct claim of ineffective assistance of counsel regarding failure to sever petitioner's trial from his co-defendant.

However, with respect to the issues actually brought herein and exhausted, the undersigned finds that the ineffective assistance claim of—failing to object regarding the non-exclusion of petitioner's separate jury when the co-defendant testified—should be denied. Likewise, petitioner's claim that an accomplice jury instruction violated due process should be denied as well.

*Procedural History and Issues*

The general background to this case is provided by the California Court of Appeal, Third Appellate District, <u>People v. Myles</u>, No. C066505, 2013 WL 4613810, at *1 (Cal. Ct. App. Aug. 29, 2013):

> Defendants Orlindo Antonio Myles and Kristopher Speight were tried together with separate juries. A jury convicted Myles of first degree residential burglary; first degree robbery; assault with intent to commit rape, oral copulation, sexual penetration or sexual penetration in concert; sexual penetration; and sexual penetration in concert. The jury also found true allegations that Myles committed the sexual offenses during a first degree burglary and that he tied or bound the victim in the commission of the sexual offenses, qualifying him for harsher punishment under the one strike law.

> A different jury convicted Speight of first degree residential burglary; first degree robbery; sexual penetration; and sexual penetration in concert. The jury also found true allegations that Speight committed the sexual offenses during a first degree burglary and that he tied or bound the victim in the commission of the sexual offenses, qualifying him for harsher punishment under the one strike law.

> The trial court sentenced Myles to a determinate term of seven years four months in prison plus a consecutive indeterminate term of 25 years to life. It sentenced Speight to a determinate term of three years in prison plus a consecutive indeterminate term of 25 years to life.

Because of the existence of the spurious ineffectiveness of counsel issue, the procedural history needs to be set forth in detail. During the state court proceedings, petitioner made a

1    motion to sever his trial from that of his co-defendant, or in the alternative, to empanel separate

2    juries. ECF No. 46-8 at 263, et seq.[1]  The motion was made because the defense anticipated that

3    *extra-judicial* statements of the co-defendant would be introduced.  In accordance with

4    petitioner's alternative request, the trial court ordered separate juries to be empaneled.  ECF No.

5    46-5 at 29.  An anticipatory motion to exclude extra-judicial statements was also made.  ECF No.

6    46-8 at 276.  At no time did petitioner's counsel express dissatisfaction that the alternative

7    separate jury paradigm was chosen by the trial court rather than a complete severance, i.e., two

8    separate trials entirely. It was also made clear at the inception of the trial that the co-defendant

9    would try to incriminate petitioner (and vice-versa).  ECF No. 46-5 at 28.

10        At the time petitioner's co-defendant was to testify, no objection was made by petitioner's

11    counsel to his testimony taking place before both juries, nor did counsel otherwise ask to have

12    petitioner's jury excused while the co-defendant's testimony took place.  See ECF No. 46-6 at

13    399-403.

14        On appeal, one claim of ineffective assistance counsel was made along with a jury

15    instruction issue regarding the "finding" of the co-defendant as an accomplice (discussed below).

16    The sole basis of the claim concerned counsel's ineffectiveness for failing to ask that petitioner's

17    jury be excused during the co-defendant's testimony.  ECF No. 46-1 at 2, 18-31.  This precise

18    claim was repeated in the petition for review before the California Supreme Court.  ECF No. 46-4

19    at 2, 13-24.

20        The first petition filed in federal court again raised only the non-excusal of the jury

21    ineffectiveness.  ECF No. 1 at 4-5. So too, the first amended petition.  The presently operative

22    second amended petition continued with the same issue,  ECF Nos. 12 at 4-5; 38 at 2, 18-24, but

23    in arguing this sole issue, petitioner's counsel posited that the state courts had missed the

24    "severance" issue.  According to petitioner the "fact" that trials may be severed when multiple

25    defendants have antagonistic defenses "proves" that an antagonistic co-defendant's testimony is

26    inadmissible as to the other defendant.  Hence, it was all the more reason to ask that petitioner's

27    _____

28        [1] In the index of the Court Transcript, ECF No. 46-8 at 10-11, the motion is erroneously described as having been brought by the "People."  It was not.  Petitioner's trial counsel brought the motion.

3

jury be excused in this case. Petitioner argued that the Court of Appeal had missed this basis in coming to its conclusion that petitioner had never explained why the co-defendant's testimony was inadmissible as to petitioner which would (and should) have triggered a request to excuse petitioner's jury. In the answer, respondent argued that this "new" severance issue was not exhausted, but also opposed the claim as a direct assertion of ineffectiveness because trial counsel had not sought to have the trials of petitioner and his co-defendant severed.

The undersigned does not fault respondent for being confused by petitioner's argument in thinking that petitioner was for the first time raising an issue that counsel was ineffective for not having sought severance of petitioner's trial from that of his co-defendant from the get-go, or even midway through trial (if that is possible). Use of the term "severance" was somewhat confusing at first glance.[2] However, in fairness and in reality, petitioner was not raising a separate ground for ineffectiveness based on failure to ask that the trial be severed, *which in fact was a request made by petitioner's trial counsel in pretrial*; counsel was merely using severance cases in which to establish a reason why the co-defendant's testimony was "inadmissible" thereby "refuting" the Court of Appeal finding that petitioner had never established a basis for claiming that petitioner's jury had to be excused during the "inadmissible" testimony of the co-defendant. Even petitioner agrees: "Petitioner has argued throughout the pendency of his case that he was denied his right to effective assistance of counsel because trial counsel should have objected to his jury hearing Speight's testimony. The mere mention of the concept of antagonistic defenses [i.e., a sometimes basis for ordering severed trials] does not change the substance of his claim." ECF No. 54-1 at 6.

Therefore, the undersigned finds that only one ineffective assistance of counsel claim has been raised herein: that trial counsel's asserted failure to ask that petitioner's jury be excused during the co-defendant's testimony constituted ineffective assistance of counsel. Whether petitioner's arguments are meritorious remains to be seen. This one ineffectiveness issue

---

[2] Generally, when one asks that a trial of a client be severed from that of a co-defendant, one is referencing a request for entirely separate trials. The only way to partly sever defendants in the same trial is to use the dual jury approach, but the approach is seldom labeled a "partial severance."

discussed above along with the jury instruction issue regarding the finding of the co-defendant as an "accomplice" are the two issues presented in this habeas petition.

*Discussion*

### Ineffective Assistance of Counsel

No party disputes that review of the petition here is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),. The AEDPA standards for ineffective assistance of counsel were succinctly set forth in the United States Supreme Court case Cullen v. Pinholster:

> There is no dispute that the clearly established federal law here is *Strickland v. Washington*. In *Strickland*, this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S.Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, at 686, 104 S.Ct. 2052 (emphasis added). The Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*, at 689, 104 S.Ct. 2052.
>
> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," *ibid.*, the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.*, at 690, 104 S.Ct. 2052. To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.*, at 688, 104 S.Ct. 2052. The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.*, at 690, 104 S.Ct. 2052.
>
> The Court also required that defendants prove prejudice. *Id.*, at 691–692, 104 S.Ct. 2052. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, *supra*, at 112, 131 S.Ct., at 791.
>
> Our review of the California Supreme Court's decision is thus "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123,

5

129 S.Ct. 1411, 1413, 173 L.Ed.2d 251 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) ). We take a "highly deferential" look at counsel's performance, *Strickland*, *supra*, at 689, 104 S.Ct. 2052, through the "deferential lens of § 2254(d)," *Mirzayance*, *supra*, at 121, n. 2, 129 S.Ct., at 1419, n. 2. Pinholster must demonstrate that it was necessarily unreasonable for the California Supreme Court to conclude: (1) that he had not overcome the strong presumption of competence; and (2) that he had failed to undermine confidence in the jury's sentence of death.

Cullen v. Pinholster, 563 U.S. 170, 189-190 (2011).

Because the reasoning of the Court of Appeal on this issue is the touchstone of AEDPA analysis, the undersigned repeats at length that analysis after giving an abbreviated backdrop of the facts of the case.[3] The evidence at trial was slanted heavily in favor of co-defendant's Speight's version of events because he testified, and petitioner did not. According to the Court of Appeal, characterizing Speight's testimony/pretrial statements and other evidence, petitioner came up with an idea to burglarize a specific residence for the taking of property. The burglary soon morphed into sexual assaults perpetrated by petitioner on one of the female residents. The co-defendant's testimony of his actions could be described as reluctant assistance in allowing petitioner to perform his sexual assaults, but ultimately reached the point of continually cajoling petitioner to leave the victim alone and leave the premises. The co-defendant Speight was quite specific and damning as to the sexual assault actions performed by petitioner during the burglary.

Petitioner's DNA evidence was found on the victim (whereas the co-defendant's was not). The victim positively identified petitioner at two live lineups as the person who sexually assaulted her, and she was able to identify the co-defendant's presence at the scene as well. A bite mark, fairly attributable to having been given by the victim was found on petitioner's arm. An item stolen from the victim was found at petitioner's aunt's house.

At various times during trial, there was evidence where petitioner's jury was excused, e.g., opening statement by codefendant's counsel, ECF No. 46-6 at 398-99. With the exception of one

---

[3] Of course, since the denial of the petition for review was without explanation, the last reasoned decision of the state courts is presumed to be the reason why the state courts did not find ineffective assistance of counsel. Wilson v. Sellers, 138 S.Ct. 1188 (2018).

stipulation which demonstrated that petitioner was much smaller than the described size of the attacker by the victim, petitioner's counsel did not present any significant evidence; the defense consisted of attempting to discredit evidence through cross-examination. See, e.g., ECF No. 46-6 at 520-577 (cross-examination of the co-defendant). As accurately characterized by the Court of Appeal, the defense implied that either petitioner was not present at the scene, or strongly argued that the victim had confused the roles played by petitioner and the co-defendant. See ECF No. 46-6 at 686-687.

A major portion of the trial consisted of the testimony by co-defendant, Speight. As related above, petitioner's counsel did not object that his testimony was inadmissible or otherwise ask that the testimony be heard only by the Speight jury. With respect to whether petitioner's counsel rendered ineffective assistance, the Court of Appeal held:

> Myles contends his trial counsel provided ineffective assistance by not moving to exclude Myles's jury when Speight testified in his own defense and implicated Myles. According to Myles, his primary defense was that he was not one of the intruders; his alternate defense was that he was not the primary offender. But Speight's defense was that Myles was the primary offender. Speight testified accordingly in front of both juries. [footnote 3 omitted].
>
> Myles cites "general authorities" for the proposition that "the failure to object to damaging and inadmissible testimony or to make appropriate motions can be the basis for a conclusion that counsel was incompetent." But those general authorities are not dispositive here because they do not involve a trial counsel's failure to object to the testimony of a codefendant before the jury of a jointly tried defendant.
>
> Myles claims *People v. Wardlow* (1981) 118 Cal.App.3d 375 (*Wardlow* ) illustrates how a dual jury trial should be conducted. But Myles concedes that the court in Wardlow did not consider the precise issue presented here; Myles has been unable to find a published California case on point. Thus, Myles turns to cases from other states. He cites a Florida case, *Watson v. State* (Fla.Dist.Ct.App.1994) 633 So.2d 525, which involved defendants who were tried together with separate juries (*id.* at pp. 525–526), but that case does not assist him. Although the Florida appellate court determined, without explanation, that it was error to permit defendant Watson's jury to remain in the courtroom during eyewitness testimony exculpating codefendant Tomingo but inculpating Watson (*ibid.*), the appellate court nonetheless affirmed the judgment against Watson because his trial counsel did not ask that Watson's jury be excused during Tomingo's case, and, in any event, the eyewitness testimony against Watson did not render his trial illegal. (*Id.* at p. 526.)

7

Myles also cites an Illinois case, *People v. Rodriguez* (Ill.Dist.Ct.App.1997) 680 N.E.2d 757, 767, but that case is distinguishable. It involved the violation of a defendant's Sixth Amendment rights where a jointly tried codefendant cross-examined defendant in the presence of defendant's jury. Here, Myles did not testify and there is no contention that Myles was precluded from presenting evidence in his case.

Ultimately, Myles fails to specify why Speight's testimony was inadmissible against Myles, and he fails to specify the particular grounds upon which his trial counsel should have objected. This failure is fatal to his ineffective assistance claim. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 114 [no basis to conclude that counsel erred in failing to object to admission of evidence where appellant offered no potential basis for objection that counsel might have overlooked]; *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1092 [failure to specify the grounds for objection and show its merits on appeal defeats ineffective assistance claim].) Accordingly, we need not consider his other contentions because he fails to demonstrate error by his trial counsel. (*People v. Maury* (2003) 30 Cal.4th 342, 389 [ineffective assistance of counsel claim requires proof that trial counsel's representation was deficient]; Strickland v. Washington (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693] [same.].)

People v. Myles, 2013 WL 4613810, at *5-6.

Petitioner attempts to show that the Court of Appeal got it AEDPA wrong, by arguing that because severance was essentially mandatory in situations where one co-defendant will point the finger at the defendant, i.e. present a defense antagonistic to the defendant's defense, that somehow makes the co-defendant's testimony "inadmissible" against the defendant in a consolidated trial. Petitioner is incorrect on all counts.

First, severance of petitioner' trial from that of his co-defendant's was not mandatory either in federal or state law.

Nevertheless, petitioners urge us to adopt a bright-line rule, mandating severance whenever codefendants have conflicting defenses. See Brief for Petitioners i. We decline to do so. Mutually antagonistic defenses are not prejudicial per se. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. See, *e.g.*, *United States v. Lane*, 474 U.S. 438, 449, n. 12, 106 S.Ct. 725, 732, n. 12, 88 L.Ed.2d 814 (1986); *Opper, supra,* 348 U.S., at 95, 75 S.Ct., at 165.

We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See *Kotteakos v. United States*, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. See, *e.g.*, *Tifford v. Wainwright*, 588 F.2d 954 (CA5 1979) (per curiam ). The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh*, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. See 481 U.S., at 211, 107 S.Ct., at 1709.

Zafiro v. United States, 506 U.S. 534, 538-539 (1993); see also Collins v. Runnels, 603 F.3d 1127, 1131 (9th Cir. 2010) (no clearly established federal law which requires severance in the presence of antagonistic defenses).

California law is even clearer that no severance would have been granted here. The court held in People v. Coffman & Morrow, 34 Cal. 4th 1, 41 (2004), that there was no absolute requirement of severance in the face of antagonistic defenses. Similarly,

"Severance is not required simply because one defendant in a joint trial points the finger of blame at another. ' " 'Rather, to obtain severance on the ground of conflicting defenses, it must be demonstrated that the conflict is so prejudicial that [the] defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' " [Citation.] *When, however, there exists sufficient independent evidence against the moving defendant, it is not the conflict alone that demonstrates his or her guilt, and antagonistic defenses do not compel severance*.' [Citation.]" (*People v. Homick, supra*, 55 Cal.4th at p. 850, 150 Cal.Rptr.3d 1, 289 P.3d 791; see *Letner and Tobin, supra*, 50 Cal.4th at p. 150, 112 Cal.Rptr.3d 746, 235 P.3d 62.)

People v. Hajek & Vo, 58 Cal 4th 1144, 1173 (2014) (emphasis added), abrogated on other grounds, People v. Rangel, 62 Cal. 4th 1192 (2016).

Clearly, with evidence in this case that petitioner's DNA was on the victim, the victim's stolen property was found with a relative of petitioner, the victim's certain identification of petitioner as the assaulter, and a bite mark attributable to having been made by the victim which was found on petitioner, there was sufficient independent evidence to convict petitioner. A complete severance was very doubtfully legally required in this case. Again, the issue here is not severance *per se*, but petitioner's theory that because severance was mandated, the resultant testimony of the codefendant in petitioner's trial before his jury was somehow inadmissible. The theory does not legally even get to first base.

More importantly, even if severance should have been more or less a given result here, petitioner does not cite any established authority for the proposition that, in the absence of severance, hostile testimony by a co-defendant, subject to cross examination, is deemed inadmissible. And the undersigned is aware of none. Petitioner simply clings to his post-trial legal *theory* that because severance should have been permitted here, a codefendant's in-court testimony in a joint trial is inadmissible. Post-trial theories, however, are not established authorities for which counsel ignores, purposefully or inadvertently, at her peril of being tarred with an ineffective assistance label. Thus, the most likely scenario to a request to excuse petitioner's jury during Speight's testimony, or an objection to proceeding with both juries, would have been a question from the judge—on what grounds…? Trial counsel would have to have said—well, I have this legal theory….not based on established authority…… We know the probable continue-with-both-juries result. Dual juries are empaneled to keep *inadmissible* evidence vis-à-vis an individual defendant from poisoning that individual defendant's case, not to prevent the submission of admissible, albeit harmful, evidence. The Court of Appeal was unimpressed with petitioner's not-based-on-authority theory. Trial counsel was not ineffective for postulating the legal theory petitioner finds so compelling post-trial, and the Court of Appeal's rejection of the theory is accordingly not AEDPA unreasonable.[4]

---

[4] The undersigned understands the logic of petitioner's argument. In the case of complete severance, in all probability, petitioner's jury would not have heard the evidence-- although there is no rule which would have prevented Speight's testimony against petitioner in a separate trial. Indeed, when a plea arrangement is made with one defendant conditioned upon truthful testimony against the [Continued…]

1    Finally, the situation presented by Speight's testimony was not one without any potential

2    benefit to petitioner. Reasonable counsel would have understood that petitioner's complete

3    exoneration defense—I was not there—was in reality a pipe dream given the objective evidence

4    that he was at the scene of the crime. Trial on this theory was what is known in the defense

5    counsel trade as a "slow plea of guilty." However, with respect to the serious sexual assault

6    charges, and who was the primary attacker, trial counsel was faced with a situation where the

7    objective evidence, with one exception as to the size of the primary attacker, pointed to her client

8    as the perpetrator. Counsel's only reasonable opportunity was to seek to raise a reasonable doubt

9    in the jury's mind as to the more serious sexual assault charges by building on the stipulation as

10   to the attacker's size, and somehow make it look like the codefendant was to blame for the sexual

11   assaults. Perhaps this would raise a reasonable doubt, even if petitioner could potentially be held

12   liable for aiding and abetting. She needed to do this through cross-examination of Speight, a

13   cross examination which petitioner's jury had to see and hear.

14   Accordingly, utilizing the above set forth legal standards for ineffective assistance

15   standards, the undersigned could not conclude that petitioner's trial counsel was deficient in any

16   manner. More importantly, it cannot be found that the Court of Appeal was acting in any way but

17   as a fairminded appellate body in rejecting petitioner's ineffective assistance of counsel theory.

18   Accordingly, the ineffective assistance claim should be denied.

19   ***Faulty Accomplice Instruction***

20   Taken out of context, petitioner posits as a claim a part of an instruction given to

21   petitioner's jury (the two juries were instructed separately) concerning the accomplice status of

22   codefendant Speight. The part of the instruction claimed as error is as follows:

23           If any of the crimes charged [against petitioner], or the lesser
             included crime, were committed, then Defendant Kristopher
24           Speight was an accomplice to those crimes.

25   ECF No. 46-6 at 359.

26   Petitioner claims that the instruction predisposed, or even instructed, the jury to believe

27   that petitioner was the primary defendant, and codefendant Speight a lesser involved person.

28   remaining defendant, such "antagonistic" testimony by a co-defendant occurs all the time.

11

1    Petitioner claims that the instruction torpedoed his partial defense that Speight was the primary

2    attacker. Petitioner had hoped to raise a reasonable doubt as to petitioner's participation in the

3    sex crimes whatsoever.

4         However, prior to setting forth the appellate court's decision regarding this claim, the

5    undersigned must place the instruction in its proper context. The instruction continued:

6              You may not convict the defendant of any of those crimes or the
               lesser included crime or any of the allegations based on the
7              statement or testimony of an accomplice alone. You may use the
               statement of an accomplice to convict the defendant only if:[giving
8              conditions for acceptance of an accomplice's testimony].

9    Id. at 359-360.

10        Thus, in reality, the instruction was of benefit to petitioner because it was instructing the

11   jury not to accept Speight's "accomplice" testimony unless certain conditions were met. This

12   places the instruction in an entirely different light than the challenged part of the instruction taken

13   out of context. Accordingly, the undersigned would recommend denial of the claim on this basis

14   alone.[5]

15        Assuming that the instruction was given in a vacuum, as did the Court of Appeal,

16   the appellate court held:

17             Myles's premise—that an accomplice is not a primary offender—is
               incorrect. For purposes of the CALCRIM No. 335 instruction, an
18             accomplice is "one who is liable to prosecution for the identical
               offense charged against the defendant." (§ 1111; People v. Avila
19             (2006) 38 Cal.4th 491, 564; People v. Felton (2004) 122
               Cal.App.4th 260, 268.) To be chargeable as an accomplice, a
20             witness must directly commit the act constituting the offense or aid
               and abet in its commission. (People v. Avila, supra, 38 Cal.4th at p.
21             564.) "Under Penal Code section 1111 ..., 'accomplice' is not
               synonymous with aider and abettor; a perpetrator can be an
22             accomplice." (People v. Felton, supra, 122 Cal.App.4th at p. 269;
               see People v. Belton (1979) 23 Cal.3d 516, 523 [perpetrator of a
23             crime is an accomplice].) Therefore, the instruction that Speight
               was an accomplice did not require the jury to find that Myles was
24             the primary offender. In fact, the trial court instructed Myles's jury
               on aiding and abetting, explaining that Myles may be guilty of a
25             crime as a direct perpetrator or an aider and abettor.

26             Myles concedes in his reply brief that defendants can both be
               accomplices. He nonetheless asserts that a reasonable jury would
27

28   _____
         [5] It is no wonder petitioner's trial counsel did not object.

have assumed that the CALCRIM No. 335 instruction meant that Myles was not an accomplice but was the primary offender in the crimes. But this speculation finds no evidence in the record.

People v. Myles, 2013 WL 4613810, at *7.

Petitioner might have a point, again assuming that the instruction was given without its proper context. While no one takes issue with the legal discussion of the Court of Appeal, the point is that the jury, unlearned in the specifics of the law, would view the term "accomplice" with its ordinary, everyday meaning. And that meaning connotes, at the very least, that an accomplice is a helper, or subordinate to, the primary actor. An accomplice is: "a person who knowingly helps another in a crime or wrongdoing, often as a subordinate." "accomplice." Dictionary.com. 2019. https://www.dictionary.com/browse/accomplice (21 Nov. 2019). [A]n accomplice is " a person who helps someone else to commit a crime." "accomplice." Cambridge Academic Content Dictionary. 2019. https://dictionary.cambridge.org/us/dictionary/english/accomplice (21 Nov. 2019). So, petitioner's argument, in a vacuum, is not based purely on speculation. However, when placed in its proper context, all of the force of petitioner's point regarding the asserted improper instruction is dispositively diminished.

> In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). [footnote 4 omitted] And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Ibid.*

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991).

As found by the Court of Appeal, albeit for different reasons, the instruction here, viewed in its entirety, violated no constitutional right possessed by petitioner. Much less AEDPA error, no error was committed at all.

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A

certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition should be denied in its entirety on the merits and dismissed; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 21, 2019

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE